**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **DALE STEVENS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CLARK A. McCLELLAN,**<br><br>**Defendant.** | **REPORT AND RECOMMENDATION**<br><br>**Case No. 2:06-cv-00215-TC-PMW** |
| **CLARK A. McCLELLAN,**<br><br>**Counterclaim Plaintiff,**<br><br>**v.**<br><br>**DALE STEVENS; ORDER OF THE WHITE LIGHT, a Utah corporation, dba WESTERN ARBITRATION COUNCIL; WAMPANOAG NATION, TRIBE OF GRAYHEAD, WOLF BAND, an unincorporated association-in-fact; and JOHN DOES, to be named later,**<br><br>**Counterclaim Defendants.** | **Chief District Judge Tena Campbell**<br><br>**Magistrate Judge Paul M. Warner** |

This case was referred to Magistrate Judge Paul M. Warner by Chief District Judge Tena Campbell pursuant to 28 U.S.C. § 636(b)(1)(B).[1] Before the court is Clark A. McClellan's

[1] *See* docket nos. 4, 5, 32.

("Defendant") motion to dismiss or, in the alternative, for summary judgment.[2] The court has carefully reviewed the written memoranda submitted by the parties. Pursuant to civil rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court has concluded that oral argument is not necessary and will determine the motion on the basis of the written memoranda. *See* DUCivR 7-1(f).

**BACKGROUND**

As a preliminary matter, the court notes that Dale Stevens ("Plaintiff") is proceeding pro se in this case. Accordingly, the court will construe his pleadings liberally. *See Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003).

At all times relevant to this case, Defendant was an attorney for the city of Vernal, Utah. According to the filings in this case, Plaintiff claims to be the chief of the Wampanoag Nation, Tribe of Grayhead, Wolf Band. Plaintiff's complaint, which was filed on March 14, 2006, alleges that Defendant failed to "answer," "respond to," or "obey" either a "notary protest" or an "[a]rbitration proceeding" with Plaintiff.[3] In his complaint, Plaintiff contends that he and Defendant entered into a written agreement on February 18, 2004.[4] Plaintiff has not provided any detail concerning this agreement, but the arbitration award attached to his complaint indicates that the agreement was reached by way of Defendant's "implied offer to contract,"

---

[2] *See* docket no. 60.

[3] Docket no. 3 at 1–2.

[4] *See id.* at 2.

Defendant's failure to respond to a "Private Settlement Offer," and three subsequent notices Plaintiff served on Defendant.[5] In essence, the arbitration award indicates that through Defendant's "silence, nonperformance[,] and non[]response" to Plaintiff's offer and subsequent notices, Defendant somehow agreed to participate in the arbitration proceeding, to pay the fees for that proceeding, to "waive all rights to a trial before a judge or jury," and to the terms of the arbitration award.[6] Plaintiff asserts that Defendant's failure to pay the arbitration award has caused him financial difficulty. In addition, Plaintiff claims that because of unspecified "illegal activities," his civil rights have been violated.[7] Based on these allegations, Plaintiff claims that he is entitled to a default judgment against Defendant in the amount of the arbitration award, plus court costs.

On April 12, 2006, Defendant filed his answer and counterclaim.[8] Defendant's counterclaim names as counterclaim defendants Plaintiff; the Order of the White Light dba Western Arbitration Council; and the Wampanoag Nation, Tribe of Grayhead, Wolf Band (collectively, "Counterclaim Defendants"). Defendant's counterclaim includes the following claims for relief: declaratory judgment, RICO violations, civil conspiracy, abuse of process, common law slander of title, and tort claims.[9] In his prayer for relief, Defendant seeks (1) an

---

[5] *Id*. at 6–7.

[6] *Id*. at 7.

[7] *Id*. at 2.

[8] *See* docket no. 7.

[9] *See id*. at 12–19.

order declaring that the Wampanoag Nation, Tribe of Grayhead, Wolf Band is not an "Indian Tribe" under the laws of the United States of America; (2) an order declaring that Dale Stevens and other purported "members" of the Wampanoag Nation, Tribe of Grayhead, Wolf Band do not hold the status of "Indians" under the laws of the United States of America, so as to be entitled to the rights, privileges, and immunities normally accorded those persons legitimately considered to be members of a federally recognized tribe; (3) an order striking, vacating, setting aside, and expunging the award, judgment, and/or lien that Plaintiff obtained, recorded, or caused to be recorded against Defendant, as well as an order enjoining Plaintiff from engaging in such activities in the future; (4) an award of general damages, with those damages trebled pursuant to 18 U.S.C. § 1964(c); (5) an award of punitive damages; and (6) an award of attorney fees and costs.[10] Plaintiff filed his answer to Defendant's counterclaim on May 1, 2006.[11]

Thereafter, Plaintiff made several filings, some of which the court construed as motions.[12] In addition, Defendant filed a motion to dismiss Plaintiff's complaint for lack of subject matter jurisdiction.[13] On May 31, 2006, this court issued a report and recommendation on those outstanding motions.[14] This court recommended that Defendant's motion to dismiss be granted

---

[10] *See id*. at 19–20.

[11] *See* docket no. 10.

[12] *See* docket nos. 9, 11, 13.

[13] *See* docket no. 19.

[14] *See* docket no. 21.

and that Plaintiff's motions be denied.[15] After receiving objections to that report and recommendation from Plaintiff,[16] and a response to those objections from Defendant,[17] Chief Judge Campbell issued an order on June 19, 2006, adopting the report and recommendation in full.[18] Accordingly, Plaintiff's complaint was dismissed, leaving only Defendant's counterclaim going forward.

On July 14, 2006, Plaintiff filed a motion to dismiss Defendant's counterclaim.[19] On September 5, 2006, after receiving Defendant's opposition memorandum[20] and Plaintiff's reply,[21] this court issued a report and recommendation on Plaintiff's motion.[22] This court recommended that Plaintiff's motion be denied, and on September 20, 2006, Chief Judge Campbell issued an order adopting that report and recommendation in full.[23]

---

[15] *See id*.

[16] *See* docket nos. 22, 23, 25.

[17] *See* docket no. 24.

[18] *See* docket no. 26.

[19] *See* docket no. 28.

[20] *See* docket no. 29.

[21] *See* docket no. 31.

[22] *See* docket no. 34.

[23] *See* docket no. 35.

On November 22, 2006, Plaintiff filed a motion to "Vacate a Void Judgement" and a motion for default judgment.[24] In a memorandum decision and order dated December 5, 2006, Chief Judge Campbell denied both of those motions.[25]

On May 18, 2007, Defendant filed with the court a "Notice of Motion to Consolidate."[26] In that notice, Defendant indicated that he had filed a motion to consolidate in another case pending in this court.[27] In that motion, Defendant sought to consolidate this case with *Burbank* because the cases involved common parties, including Plaintiff, and dealt with common questions of law and fact.[28] That motion to consolidate was eventually denied in *Burbank*.[29] In

---

[24] *See* docket no. 36.

[25] *See* docket no. 38.

[26] *See* docket no. 39.

[27] *See Burbank v. United States District Court of Utah, et al.*, 2:04-cv-742-SPF. Although *Burbank* was filed in this court, the complaint named "All Judges" of the United States District Court for the District of Utah as defendants. *Id*. docket no. 1. at 1. Accordingly, each District Judge from the District of Utah to whom the case was assigned recused himself or herself from presiding over the case. The case was then assigned to District Judge John E. Conway of the United States District Court for the District of New Mexico. *See id*. docket no. 4. Judge Conway then referred the case to Magistrate Judge Richard L. Puglisi of the District of New Mexico pursuant to 28 U.S.C. § 636(b)(1)(A). *See id*. docket no. 26. In November 2007, both Judge Conway and Magistrate Judge Puglisi recused themselves from presiding over the case, *see id*. docket nos. 194–195, and the case was reassigned to District Judge Stephen P. Friot of the United States District Court for the Western District of Oklahoma. *See id*. docket no. 194.

[28] *See id*. docket no. 170.

[29] *See id*. docket no. 211.

denying the motion, Judge Friot noted that while there were similarities with respect to the claims asserted in both cases, the "line-up" of parties in each case differed significantly.[30]

On May 31, 2007, apparently in response to the motion to consolidate filed in *Burbank* and Defendant's notice of that motion filed in this case, Plaintiff filed a document entitled, "Affidavit in Oppashation [sic] to Consolidate and Demand to Dismiss the Counterclaim."[31] The court construed that document to be both an opposition to Defendant's motion to consolidate filed in *Burbank*, as well as a motion to dismiss Defendant's counterclaim in this case. Later, in June 2007, Plaintiff filed two more documents, one entitled, "Notice of Failer [sic] to Respond With Any Response,"[32] and the other entitled, "Affidavit to Vacate a Void Judgment and Demand the Court Obay [sic] Public Law."[33]

On November 19, 2007, this court issued a report and recommendation addressing Plaintiff's motion to dismiss, as well as his June 2007 filings.[34] This court recommended that Plaintiff's motion be denied.[35] On November 29, 2007, the court granted Plaintiff's request for an extension of time to respond to the report and recommendation.[36] When Plaintiff failed to file

---

[30] *Id*. at 2.

[31] Docket nos. 40, 41.

[32] Docket no. 42.

[33] Docket no. 44.

[34] *See* docket no. 47.

[35] *See id*.

[36] *See* docket nos. 49–51.

any response within the extended deadline, Chief Judge Campbell issued an order on January 14, 2008, adopting the report and recommendation in full.[37]

On February 22, 2008, Defendant's counsel requested a scheduling conference with the court.[38] The court issued a notice of hearing on February 28, 2008, setting a scheduling conference for March 11, 2008.[39] The court held the hearing on March 11, 2008, and Plaintiff did not appear, despite being provided with the above-referenced notice.[40] Defendant's counsel, on the other hand, did appear at the conference.[41] During the conference, the court selected deadlines for a scheduling order and entered that order at the conclusion of the conference.[42]

On July 11, 2008, Defendant filed the motion before the court.[43] Plaintiff filed his response to the motion on July 28, 2008,[44] and Defendant filed his reply on August 6, 2008.[45]

Although it is Defendant's motion in the instant case that is before the court, the court will briefly set forth some background from *Burbank* because it is relevant to the court's analysis

---

[37] *See* docket no. 52.

[38] *See* docket no. 53.

[39] *See* docket no. 54.

[40] *See* docket no. 55.

[41] *See id*.

[42] *See id*.; docket no. 56.

[43] *See* docket no. 60.

[44] *See* docket no. 62.

[45] *See* docket no. 63.

of Defendant's motion. Notwithstanding Judge Friot's decision to deny Defendant's motion to consolidate this case with *Burbank*, there are substantial similarities between the two cases. While there were additional parties involved in *Burbank*, all Counterclaim Defendants, including Plaintiff, were also counterclaim defendants in *Burbank*.[46] In addition, both cases have substantially similar underlying facts. Finally, and most notably, the counterclaim asserted in *Burbank* is nearly identical to the counterclaim asserted in this case.[47]

After presiding over a bench trial in *Burbank* in April 2008,[48] Judge Friot issued the final judgment in that case on May 12, 2008.[49] In that final judgment, Judge Friot entered judgment of no cause of action on the plaintiffs' complaint and judgment in favor of the counterclaim plaintiffs on their counterclaim.[50] In rendering judgment in favor of the counterclaim plaintiffs, Judge Friot ruled that they were entitled to their requested declaratory, mandatory, prohibitory, and injunctive relief.[51] More specifically, as the final judgment relates to the instant case, Judge Friot ordered that:

1. The *Burbank* counterclaim defendants, including Counterclaim Defendants, "do not, by virtue of any association with the Wampanoag

---

[46] *See Burbank*, 2:04-cv-742-SPF, docket no. 237 at 2.

[47] *Compare* docket no. 7 at 12–19, *with Burbank*, 2:04-cv-742-SPF, docket no. 237 at 18–27.

[48] *See Burbank*, 2:04-cv-742-SPF, docket nos. 275–76.

[49] *See Burbank*, 2:04-cv-742-SPF, docket no. 290.

[50] *See id*. at 2–3.

[51] *See id*. at 3.

Nation, Tribe of Grayhead, Wolf Band, hold the status of 'Indians' under the laws of the United States of America so as to be entitled to the rights, privileges[,] or immunities normally accorded those persons legitimately considered to be members of a federally recognized tribe."[52]

2. "[T]he Wampanoag Nation, Tribe of Grayhead, Wolf Band is a sham"; "the members of the Wampanoag Nation, Tribe of Grayhead, Wolf Band," including Plaintiff, "are not, by virtue of that membership, entitled to the status of 'Indians' under federal law"; and "neither this sham Tribe nor its members enjoy any immunity from the operation of federal law or Utah law by virtue of the existence of that organization or their membership in this sham Tribe or their association with this sham Tribe."[53]

3. Two of the *Burbank* counterclaim defendants, including Plaintiff, "who have filed and/or recorded UCC-1 statements with the Utah Department of Commerce, Division of Corporations, against [certain of the *Burbank* defendants] shall sign releases of those filings."[54]

4. "[O]n or before May 13, 2008, [Plaintiff] is to sign a release of the purported entry of judgment by default against Judge Clair M. Poulson[,] which [Plaintiff] filed and/or recorded on April 25, 2008 with the Eighth Judicial District Court, State of Utah, in and for Uintah County, and with the Uintah County Recorder's Office."[55]

5. The *Burbank* counterclaim defendants, including Counterclaim Defendants, "are enjoined and restrained from, directly or indirectly, undertaking to institute any proceedings of any kind against [the *Burbank* counterclaim plaintiffs] by way of civil action, criminal prosecution, arbitration, administrative proceeding, or other purported proceeding other than proceedings well founded in fact and law and expressly provided for by the laws of the United States or the applicable laws of any state."[56]

---

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Id.* at 3–4.

[56] *Id.* at 4.

6. "[T]he UCC-1 filings [that two of the *Burbank* counterclaim defendants, including Plaintiff,] have recorded or caused to be recorded against [the *Burbank* counterclaim plaintiffs] are expunged, and [the *Burbank* counterclaim defendants, including Counterclaim Defendants,] are further enjoined and restrained from engaging in such activities in the future."[57]

7. "[T]he purported entry of judgment by default against Judge Clair Poulson [that Plaintiff] filed and/or recorded on April 25, 2008, with the Eighth Judicial District Court in and for the State of Utah, Uintah County, and the Uintah County Recorder's Office is expunged, and that [the *Burbank* counterclaim defendants, including Counterclaim Defendants,] are further enjoined and restrained from making any such filings and/or recordings in the future."[58]

Judge Friot also ruled that the *Burbank* counterclaim plaintiffs were entitled to judgment for certain monetary relief.[59] That judgment included attorney fees, the amount of which was determined by Judge Friot based upon an appropriate motion filed by the counterclaim plaintiffs.[60] In addition, Judge Friot determined that the *Burbank* counterclaim defendants, including Counterclaim Defendants, were jointly and severally liable for the damages awarded.[61] Finally, Judge Friot determined that the damages awarded to the *Burbank* counterclaim plaintiffs were "based upon actual frauds committed against them by" the *Burbank* counterclaim

---

[57] *Id*.

[58] *Id*.

[59] *See id*. at 5–6.

[60] *See id*. at 5–6; *Burbank*, 2:04-cv-742-SPF, docket nos. 289, 309–10.

[61] *See Burbank*, 2:04-cv-742-SPF, docket no. 290 at 6.

defendants, including Counterclaim Defendants.[62] Two of the *Burbank* counterclaim defendants, one of whom is Plaintiff, have appealed Judge Friot's ruling to the Tenth Circuit.[63]

Having laid out the relevant background, the court now turns to addressing the motion before the court, Defendant's motion to dismiss or, in the alternative, for summary judgment.

## ANALYSIS

### I. Motion to Dismiss

In his motion and supporting memorandum, Defendant argues that Plaintiff's complaint should be dismissed. However, as noted by Plaintiff in his response to Defendant's motion, and as admitted by Defendant in his reply memorandum, Plaintiff's complaint was dismissed over two years ago. As previously noted, this court issued a report and recommendation on May 31, 2006, in which it recommended that a motion to dismiss previously filed by Defendant be granted. On June 19, 2006, Chief Judge Campbell issued an order adopting that report and recommendation in full. As a result, Plaintiff's complaint was dismissed at that time, leaving only Defendant's counterclaim going forward. For these reasons, Defendant's motion to dismiss Plaintiff's complaint should be considered **MOOT**.

### II. Motion for Summary Judgment

Defendant's motion also seeks summary judgment on his counterclaim. Based upon the final judgment issued in *Burbank*, Defendant argues that the doctrine of collateral estoppel

---

[62] *Id.*

[63] *See Burbank*, 2:04-cv-742-SPF, docket nos. 295, 298.

precludes relitigaton of the counterclaim and urges the court to enter final judgment in his favor on the counterclaim in a form substantially similar to the final judgment entered in *Burbank*.

"Collateral estoppel, or, as it is often known, issue preclusion, bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim."[64] *Burrell v. Armijo*, 456 F.3d 1159, 1172 (10th Cir. 2006) (quotations and citation omitted), *cert. denied*, 127 S. Ct. 1132 (2007). Typically, collateral estoppel is asserted as an affirmative defense. *See, e.g.*, *Valley View Angus Ranch, Inc. v. Duke Energy Field Servs.*, 497 F.3d 1096, 1106 (10th Cir. 2007). In this case, however, Defendant seeks to use offensive, nonmutual collateral estoppel to foreclose Plaintiff from relitigating the issues that Plaintiff previously litigated and lost against the counterclaim plaintiffs in *Burbank*. *See Seneca-Cayuga Tribe of Okla. v. Nat'l Indian Gaming Comm'n*, 327 F.3d 1019, 1029 (10th Cir. 2003) (stating that offensive, nonmutual collateral estoppel "describes claims . . . in which a plaintiff is seeking to [prevent] a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff" (quotations and citations omitted) (second alteration in original)). "A court has broad discretion to determine when offensive, non[]mutual collateral estoppel should be applied." *Coburn v. SmithKline Beecham Corp.*, 174 F. Supp. 2d 1235, 1239 (D. Utah 2001).

---

[64] "The terms 'collateral estoppel' and 'issue preclusion' are used interchangeably." *Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation*, 975 F.2d 683, 686 n.4 (10th Cir. 1992).

"In considering collateral estoppel, [the court] first must determine whether to apply federal or state law." *Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation*, 975 F.2d 683, 687 (10th Cir. 1992). In this case, however, such a determination is unnecessary because the required elements for collateral estoppel under Utah law are substantially the same as those under federal law. *See, e.g.*, *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 977–78 (10th Cir. 1995) ("It is not necessary to make a choice between Utah and federal rules relating to collateral estoppel to resolve the issue before the court. We have previously recognized that collateral estoppel requirements under Utah law are substantially the same as under federal law." (quotations and citations omitted)); *see also Burrell*, 456 F.3d at 1172 (stating requirements for issue preclusion under federal law); *Snyder v. Murray City Corp.*, 73 P.3d 325, 332 (Utah 2003) (stating requirements for issue preclusion under Utah law). Consequently, the outcome in this case would be the same whether the court applies federal law or Utah law. Given that the choice of law is not determinative of the outcome, the court has chosen to apply the elements of issue preclusion established under federal law.

The application of issue preclusion requires the following four elements:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Murdock*, 975 F.2d at 687 (quotations and citations omitted). The court will address each of those elements in turn.

First, the court has determined that the central issue presented by this case is identical to the central issue presented in *Burbank*. More specifically, both the plaintiffs in *Burbank* and Plaintiff in this case filed their complaints to have the court enforce fraudulently obtained arbitration awards against government officials in the same county in Utah. In addition, and as noted above, the counterclaims brought by both the counterclaim plaintiffs in *Burbank* and Defendant in this case are nearly identical. For these reasons, the court concludes that the first element is satisfied in this case.

Second, the court has determined that *Burbank* ended in a final judgment on the merits. As noted above, on May 12, 2008, Judge Friot entered the final judgment in *Burbank* in which he entered a judgment of no cause of action on the plaintiffs' complaint and judgment in favor of the counterclaim plaintiffs on their counterclaim. The court recognizes that two of the *Burbank* counterclaim defendants, one of whom is Plaintiff, have appealed that final judgment to the Tenth Circuit. Those appeals, however, have no effect on the finality of the judgment for purposes of issue preclusion. *See Ruyle v. Continental Oil Co.*, 44 F.3d 837, 846 (10th Cir. 1994) ("Under the federal view, the pendency of an appeal does not prevent application of the collateral estoppel doctrine unless the appeal involves a full trial de novo. The majority of state courts follow the federal rule." (citations omitted)); *see also Copper State Thrift & Loan v. Bruno*, 735 P.2d 387, 390 (Utah Ct. App. 1987) ("A judgment or order, once rendered, is final for purposes of res judicata until reversed on appeal or modified or set aside in the court of rendition."). Accordingly, the second element is satisfied in this case.

Third, it cannot be disputed that Plaintiff was a party in *Burbank*. Indeed, Plaintiff is identified in numerous pleadings in *Burbank* as a counterclaim defendant in that case. In addition, both Plaintiff and the plaintiff in *Burbank* profess to be members of the Wampanoag Nation, Tribe of Grayhead, Wolf Band, an entity that is a counterclaim defendant in both *Burbank* and this case. For these reasons, the court concludes that the third element is satisfied in this case.

Fourth, the court has determined that Plaintiff had a full and fair opportunity to litigate the central issue in this case in *Burbank*. According to the minute entries of the two-day bench trial in *Burbank*, Plaintiff was present during both days of the trial. Plaintiff was provided with the opportunity to present evidence and argument on the counterclaim in *Burbank* and appears to have fully participated in all aspects of the trial. Accordingly, the court concludes that the fourth element is satisfied in this case.

As a final matter, the court notes that Plaintiff's response to Defendant's motion does not present any argument to indicate that any of the above-referenced elements have not been satisfied in this case.

Having concluded that all four of the elements are established in this case, the court concludes that the doctrine of issue preclusion prevents relitigation of the counterclaim in this case. Accordingly, Defendant's motion for summary judgment on the counterclaim should be **GRANTED**.

In addition, the court should enter final judgment in Defendant's favor on the counterclaim in a form substantially similar to the final judgment entered in *Burbank*.[65] More specifically, the court should order that:

1. Plaintiff does not by virtue of any association with the Wampanoag Nation, Tribe of Grayhead, Wolf Band, hold the status of an "Indian" under the laws of the United States of America so as to be entitled to the rights, privileges, or immunities normally accorded those persons legitimately considered to be members of a federally recognized tribe.

2. The Wampanoag Nation, Tribe of Grayhead, Wolf Band is a sham; the members of the Wampanoag Nation, Tribe of Grayhead, Wolf Band, including Plaintiff, are not, by virtue of that membership, entitled to the status of "Indians" under federal law; and neither that sham Tribe nor its members enjoy any immunity from the operation of federal law or Utah law by virtue of the existence of, their membership in, or their association with that sham Tribe.

3. Plaintiff shall sign a release of any purported arbitration awards obtained against Defendant, and any such awards are stricken, vacated, set aside, and expunged.

4. Counterclaim Defendants are enjoined and restrained from, directly or indirectly, undertaking to institute any proceedings of any kind against Defendant by way of civil action, criminal prosecution, arbitration, administrative proceeding, or other purported proceeding other than proceedings well founded in fact and law and expressly provided for by the laws of the United States or the applicable laws of any state.

5. Counterclaim Defendants shall sign releases of any UCC-1 statements filed and/or recorded against Defendant; any such filings are stricken, vacated, set aside, and expunged; and Counterclaim Defendants are enjoined and restrained from engaging in such activities in the future.

[65] *See Burbank*, 2:04-cv-742-SPF, docket no. 290.

Also consistent with *Burbank*, the court should award Defendant his attorney fees and costs, the amount of which to be determined by the court based upon an appropriate motion filed by Defendant. In making that award, the court should order that Counterclaim defendants are jointly and severally liable for the award.

While Defendant also requested an award of monetary damages as part of his counterclaim, no damages have been established or proven, and Defendant does not request a specific amount in his motion for summary judgment. Accordingly, an award of monetary damages does not appear to be appropriate.

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, **IT IS HEREBY RECOMMENDED**:

1. Defendant's motion to dismiss Plaintiff's complaint[66] be considered **MOOT**.

2. Defendant's motion for summary judgment on the counterclaim[67] be **GRANTED**, with final judgment entered in Defendant's favor on the counterclaim in a form substantially similar to the final judgment entered in *Burbank*, as discussed in more detail above.

* * * * *

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object. *See* 28 U.S.C. § 636(b)(1)(C). The parties must file any

---

[66] *See* docket no. 60.

[67] *See id.*

objection to this Report and Recommendation within ten (10) days after receiving it. *See id*. Failure to object may constitute waiver of objections upon subsequent review.

DATED this 16th day of October, 2008.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge